IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. KENNETH ENGLAND

**Appeal from the Criminal Court for Campbell County**
**No. 10,145    R. Shayne Sexton, Judge**

_____

**No. E2000-00535-CCA-R3-CD**
**January 10, 2001**
_____

The defendant appeals the revocation of his community corrections sentence. Finding a lack of justiciable, substantial evidence to support the revocation, we reverse.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Charles Herman, Assistant Public Defender, Julie A. Rice, for the Appellant, Kenneth England.

Paul G. Summers, Attorney General & Reporter; Patricia C. Kussman, Assistant Attorney General; William Paul Phillips, District Attorney General; Mike Ripley and Todd Longmire, Assistant District Attorneys General, for the Appellee, State of Tennessee

**OPINION**

The defendant, Kenneth England, appeals the Campbell County Criminal Court's revocation of his community corrections sentence. On November 29, 1999, that court placed the defendant on community corrections following his guilty plea and conviction of three counts of felony retaliation for past action and the imposition of an effective four-year, Range I sentence. *See* Tenn. Code Ann. § 39-16-510 (1997) (proscribing retaliation for past action, a Class E felony). On December 1, 1999, the defendant signed a "Behavior Contract and Conditions" for his community corrections sentence. In it, he agreed to various standard conditions and agreed to avoid contact with the female victims of the conviction offenses. After the defendant violated several halfway house rules, the community corrections officer obtained a revocation warrant, and after a hearing on February 15, 2000, the trial court revoked the defendant's community corrections sentence. It ordered him to serve his sentence in the Department of Correction, with credit for 78 days that the defendant served in the community program. On appeal, the defendant claims that the trial court erred in revoking the community corrections sentence. After a review of the record, the briefs, and the applicable law, we reverse the trial court's judgment.

At the revocation hearing, the state presented evidence that during group day-treatment sessions at the Kress Center, the defendant made racially inflammatory remarks that led to confrontations with black group members, made "general" threats such as "I'll cut somebody if they f— with me," exhibited "intimidating" body language, followed one of the female group members "around the center," was disruptive in group sessions, and "refused to participate in any of the daily living skills activities on more than one occasion." Also, the Cavender Hall Recovery House, a halfway house in which the defendant resided during the latter part of his brief community corrections experience, discharged the defendant on January 11, 2000 because he violated "house rules" by missing curfew on one occasion by two hours and on another occasion by eight hours, carrying an open pocket knife on December 31, 1999 and steak knife on January 6, 2000, making racial slurs between January 2 and 11, 2000, making threats of bodily harm to a house member on January 11, 2000, and committing "[p]hysical violence" on January 11, 2000 by being "assaultive to fellow house member."

The defendant testified at the revocation hearing that he performed all of the requirements of Kress center, the day treatment provider. He said, "[T]hey was wanting everybody to hug, and I didn't want to hug nobody, . . . [but] I done everything they told me to do, everything." He admitted violating curfew at the halfway house but claimed extenuating circumstances. He testified that the second curfew violation resulted from his being late due to his having to walk a long distance to return from a visit to a hospital and a drugstore. He protested that, despite his call to the halfway house during the journey and the assurance of someone at the house that his call and his inability to travel faster would absolve him from a curfew violation, he was charged with a curfew infraction nevertheless. He admitted carrying the knives but posited that he needed a means of self-defense due to his small stature and his presence on the streets in crime-ridden areas. He did not know that carrying the knives violated the terms of his community program; in fact, on one occasion, the police stopped him, took the pocket knife, and returned it to him before releasing him. He did not recall making racial slurs and denied committing any threats or assaults.

After the evidence was presented and the case was argued, the trial court found that "there is sufficient evidence to support the allegations that have been made by the Corrections Program[, although i]t is a very sad situation, it does appear to be a very technical violation." The court revoked the community corrections placement, awarded 78 days credit on the defendant's sentence, and ordered him to serve the balance of the sentence in the Department of Correction.

On appeal, the defendant argues that there was a lack of proof that "he ignored his responsibility for attending the day treatment program and . . . that he had sufficient time to complete any program, much less fail to complete it."

He essentially complains that the proof that he was discharged from his halfway-house residence is insufficient to support a finding that he violated rule 17 of his community corrections agreement. The violation warrant alleged *only* that the defendant violated rule 17 in that "the client failed to participate and complete treatment." Rule 17 requires the defendant to "submit to alcohol/drug assessment/treatment/evaluation and follow recommendations." He correctly points

out that he had neither been terminated from, nor had he withdrawn from, his day-treatment program at the Kress Center and that the Kress Center has no connection to the Cavender Hall Recovery House, the half-way house where he resided. He is also correct that it was his discharge from the half-way house which prompted the filing of the violation warrant, even though the warrant did not allege this discharge or the defendant's behavior at the half-way house as grounds for revocation.

The evidence is more equivocal about whether his community corrections officer required him to reside at Cavender Hall and whether the defendant's residence there was in some way a part of or requisite to his receiving treatment at Kress. When the state elicited testimony from the community corrections officer that the defendant had committed house infractions at Cavender Hall, the defendant objected. In its response to the objection, the state argued that it could pursue the questioning upon the premise that "Cavender Hall is the halfway house that the defendant is required to live in and is required to live by those rules. Part of those rules are the day treatment program." The prosecutor then stated to the court, "That is part and parcel one . . . with the other." The trial court overruled the defendant's objection. Then, directing a question to the witness, the prosecutor asked, "Am I not correct?" to which the witness responded, "Yes." However, the court had received no evidence prior to this exchange that community corrections personnel required the defendant to reside at Cavender Hall or that his residence there was an integral part of the "required" treatment program at Kress Center, an unrelated facility.

Later in the hearing, the community corrections officer testified as follows:

Q  Does one have to be a resident of Cavender Hall . . . to be involved in treatment and counseling at [Kress Center]?
A  No.
Q  So, if he had a problem at the halfway house, he could have been, say transferred to another halfway house and he could have continued his treatment?
A  As far as I know. [Kress] Center has not stated otherwise.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation has occurred. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If the evidence is sufficient, the trial court may, within its discretionary authority, revoke the community corrections sentence and require the defendant to serve his sentence in confinement. Tenn. Code Ann. § 40-36-196(e)(3) (Supp. 1998).

At the outset, we must state that we have concerns about the Cavender Hall and "weapon" violations that are different from those the defendant raises in his complaint relative to sufficiency. To the extent that the trial court may have relied upon the events at Cavender Hall and

the knife possession that led to the defendant's discharge from that facility – or may have relied upon the discharge itself – as bases for revoking the community placement, the defendant was not afforded due process notice of these grounds for revocation. Essentially a probationer is entitled to notice of the bases upon which the state seeks to revoke probation, and he or she is entitled to a hearing. *See Gagnon v. Scarpelli*, 422 U.S. 778, 781-82, 93 S. Ct. 1756, 1759-60 (1973); *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997); Tenn. Code Ann. § 40-35-311 (1997). The requirement of notice applies in a community corrections revocation proceeding just as it does in probation revocations. *Bentley v. State*, 928 S.W.2d 706, 714 (Tenn. Crim. App. 1996).

In the present case, the state alleged only that the defendant violated rule 17 with respect to the treatment requirement. The evidence of the defendant's misbehavior at Cavender Hall may have supported violations of community corrections rules 7 (with respect to the possession of dangerous weapons), 12 (with respect to obeying state laws), and perhaps 21 (with respect to attending and participating in programs required by his case officer, "i.e. support groups, therapy groups"); however, the defendant received no notice that violations of these rules would serve to justify the revocation of his community placement sought by the warrant. Thus, had the trial court relied upon the events at Cavender Hall as independent community correction rules infractions, the revocation would be constitutionally and statutorily infirm.

On the other hand, we do not discern that the trial court utilized this evidence in this manner. The trial judge overruled the defendant's objection to the introduction of the Cavender Hall evidence after the state argued that the house-rule infractions and discharge at Cavender Hall were "part and parcel" of the Kress Center treatment program that was mandated pursuant to rule 17. As such, the trial court considered the Cavender Hall evidence to implicate a violation of rule 17, rather than supplying independent grounds for revocation. Thus, the issue becomes whether the evidence supports the trial court's discretionary use of the Cavender Hall evidence as a basis for finding that the defendant failed to submit to treatment or follow treatment recommendations.

With all due respect for the trial court's ambit of discretion in the matter, we cannot conclude that substantial evidence supports a conclusion that the defendant's continued billet at Cavender House was a requirement of community corrections or was a condition of the day-treatment program. Furthermore, we cannot conclude, apart from the Cavender Hall evidence, that no substantial evidence was presented that the defendant failed to comply with community corrections rule 17 that he "submit" to treatment or "follow recommendations."

To be sure, the community corrections officer answered affirmatively during her testimony when the prosecutor apparently asked her if he was correct that the defendant was required by community corrections to reside at Cavender Hall and the halfway house billet was "part and parcel" with the day treatment. However, before the question was asked and answered, the trial court accepted the state's "part and parcel" argument, even though no evidence supported it. The remainder of the officer's testimony can only be understood to belie the impression that community corrections required the defendant to live at Cavender Hall or that the Cavender Hall residence was integral to the day treatment at Kress Center. In short, no substantial evidence exists to support

either of these propositions. We conclude that the evidence of the defendant's Cavender Hall deportment cannot be brought into the case under the rubric alleged in the violation warrant.

The remaining question is whether the defendant's deportment at Kress Center alone supports the decision to revoke the community placement. Again, substantial evidence is lacking on the issue of whether the defendant failed to submit to treatment or failed to follow treatment recommendations. We believe the paucity of evidence was mirrored in the trial court's comment that the alleged violations appeared to be "very technical." We construe the trial judge's findings to mean that he relied upon both the Kress Center report and the Cavender Hall report to justify revocation. We do not believe that the Kress Center report in itself justifies revocation, nor do we believe that the trial court would have held otherwise had it realized that the Cavender Hall information was not justiciable.

Finding no substantial evidence to support the revocation, we reverse the trial court and vacate the judgment. Although the present violation warrant must be dismissed, we point out that the state is apparently free to initiate a new warrant that alleges appropriate community corrections rule violations that emanate from the defendant's misconduct, either at Cavender Hall or while on the street in the possession of a weapon.

_____
JAMES CURWOOD WITT, JR., JUDGE